Gabriele A. KIMMONS, Appellant,

v.

Rolf Hans Hubert HELDT, Appellee.

No. 6254.

Supreme Court of Alaska.

Aug. 16, 1983.

As Amended on Rehearing Granted in Part, Denied in Part Aug. 16, 1983.*

* Rabinowitz and Matthews, Justices, dissent, They would grant the petition for rehearing, for the reasons stated in their dissenting opinion.

Robert D. Frenz, Wayne Anthony Ross & Associates, Anchorage, for appellant.

Max F. Gruenberg, Jr., Anchorage, for appellee.

## AMENDED OPINION

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and MOODY, Judge.*

COMPTON, Justice.

This appeal arises from a child custody dispute between Appellant Gabriele Kimmons and Appellee Rolf Heldt. The Alaska Superior Court dismissed Kimmons' proceeding on the basis that California was already exercising jurisdiction over the dispute in a proceeding commenced by Heldt. The court subsequently ordered recognition of the California decree awarding physical custody of the parties' child to Heldt. The court also awarded full attorney's fees to Heldt. From these determinations, Kimmons now appeals. For the reasons set forth below, we affirm the judgment of the superior court, except as to the issue of attorney's fees.

---

* Moody, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal presents a classic example of the type of jurisdictional conflict sought to be avoided by the Uniform Child Custody Jurisdictional Act, adopted in Alaska at AS 25.30.010—AS 25.30.910. The case comes before us following a series of proceedings initiated concurrently in Alaska and California, in which both parties sought to obtain custody of their child, Colin James Heldt.

Kimmons and Heldt were divorced in Colorado in October of 1976. At that time, Kimmons was awarded custody of their one-year-old son, Colin. In February of 1978, Kimmons and Colin moved to Alaska, where they resided together until December of 1980.

On December 2, 1980, Kimmons sent Colin to Heldt in California. She prepared the following notarized statement for Heldt: "I, Gabriele Anna Kimmons, mother of Colin James Heldt, herewith return permanent custody of said minor child to his father, Rolf Hans Hubert Heldt. It is my son's wish to be with his father, and I am acting accordingly in the child's best interest." Kimmons argues that in preparing this statement she had no desire or intent to actually return custody of Colin to Heldt. She contends that she sent Colin to Heldt only so that Heldt could take Colin on the trip to Germany Heldt was planning. Kimmons states that Heldt dictated the first sentence of the statement to her, explaining that it was necessary for him to have such a statement in the event he took Colin out of the country or enrolled him in kindergarten. Kimmons acknowledges that she added the second sentence of the statement of her own accord.

On January 7, 1981, Heldt requested the California Superior Court in Santa Clara to modify the Colorado custody decree and award him permanent custody of Colin. A hearing was held before Judge Panelli on April 28, 1981. Kimmons participated in the proceedings. She did not suggest at that time that California lacked jurisdiction to decide the matter, but instead stipulated that California had jurisdiction and filed her own petition to enforce the Colorado decree. In accordance with the recommendation of the San Jose Juvenile Probation Department, which had interviewed both Kimmons and Heldt, the court ordered that Kimmons and Heldt temporarily be awarded joint custody of Colin. Colin was to stay with Heldt until June 20, 1981, and then visit his mother in Alaska until August 20, 1981. On August 21, 1981, another hearing was to be held before the superior court, at which time the issue of permanent custody would be decided.

Kimmons thereafter returned to Alaska. On May 29, 1981, she filed a Petition for Recognition of Custody with the superior court. Kimmons' Petition alleged that Alaska had jurisdiction to hear the case because Alaska had been Colin's home state within six months of when she filed her petition. Heldt was not served with the pleadings until July 25, 1981.

On June 21, 1981, Colin returned to Alaska for his summer visit with his mother. A jurisdictional hearing on Kimmons' Petition was held before Judge Buckalew on August 10, 1981. Judge Buckalew reserved judgment in the matter so that he could communicate with Judge Panelli, who was conducting the California proceedings.

Following his communications with Judge Panelli, Judge Buckalew decided that Alaska should not exercise its jurisdiction, but should instead defer to the on-going California proceedings. He dismissed Kimmons' Petition for lack of jurisdiction and instructed her to continue participating in the California proceedings.

In California, the superior court received the additional investigative reports relevant to the custody dispute that it had previously requested. These reports included a Custody Evaluation prepared at Kimmons' request in Alaska. Testimony was received at the hearing from a probation officer, a physician, a teacher, and Mr. Heldt. On the basis of this information, the superior court entered its final decree awarding joint legal custody of Colin to Kimmons and Heldt,

with exclusive physical custody awarded to Heldt.

On January 15, 1982, Heldt moved to enforce the California decree in Alaska. Over Kimmons' objection, Judge Ripley ordered recognition of the decree after communicating with the superior court in California. Full attorney's fees were awarded to Heldt. From these decisions, Kimmons appeals.

## II. DISMISSAL OF ALASKA PROCEEDINGS

■ Kimmons contends that the superior court erred in dismissing her Petition and deferring to California for resolution of the custody dispute. Kimmons observes at the outset that Alaska had jurisdiction to determine the dispute. AS 25.30.020 provides in relevant part as follows:

(a) The superior court has jurisdiction to make a child custody determination by initial or modification decree if the conditions set out in any of the following paragraphs are met:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state . . . .

It is clear that Alaska was the home state of Colin as of December 1, 1980. Kimmons filed her petition on May 29, 1981, just two days before the six-month period elapsed. Accordingly, Alaska had jurisdiction to enforce or modify the Colorado custody decree.

This does not mean, however, that California could not also have had jurisdiction to resolve the dispute. A section of the Uniform Child Custody Jurisdiction Act ("Uniform Act"), adopted by California but not by this state, confers jurisdiction under the following circumstances:

It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . .

Uniform Act § 3(a)(2), 9 U.L.A. 122 (1979); Cal.Civ.Code § 5152. Although the California court did not expressly find that it had jurisdiction under this section, it is the only section jurisdiction possibly could be based upon because California was not the home state of Colin at the time Heldt commenced his proceedings and the other jurisdictional bases are simply inapplicable. We believe that the finding that California had jurisdiction under this section is implicit in the California Superior Court's denial of Kimmons' motion to dismiss the action for lack of jurisdiction, which motion had been filed some time after the court awarded temporary physical custody of Colin to Heldt.

At the time Heldt filed his action in California, he was a resident of that state and he contends that he believed Kimmons had agreed to his permanent custody of Colin. As indicated previously, Kimmons contends that she did not intend to give permanent custody of Colin to Heldt; she merely intended for Colin to visit temporarily with Heldt. If the California Superior Court resolved this credibility issue in Heldt's favor, it could reasonably have concluded that Colin had a significant connection with California. The evidence of Colin's future care, protection, training and personal relationships would exist in California, rather than in Alaska.[1] Accordingly, it is at least arguable that California's exercise of jurisdiction was proper under the Uniform Act.

Were we deciding the issue in the first instance, we would have serious reservations in concluding that California had the requisite significant connections with Colin

---

1. We note that at the time Heldt commenced his action in California, Colin was approxi-

mately five years old and had lived in Alaska for only thirty-four months.

to confer jurisdiction over the dispute. We do not believe it is appropriate, however, for any state to lightly disregard the Uniform Act's goal of avoiding "the havoc wreaked by simultaneous and competitive jurisdiction." Commissioner's Note to section 6 of the Uniform Act, 9 U.L.A. 1234 (1979). If it were apparent that California did not have the significant connections with Colin necessary for the state to exercise jurisdiction over the dispute, we would without hesitation permit Alaska to exercise the jurisdiction obviously conferred to it by the Uniform Act. The facts of this case, however, present a closer question. Under these circumstances, we cannot say that it is apparent that California's exercise of jurisdiction violated the Uniform Act.[2]

Section 6(a) of the Uniform Act, which has been adopted in this state as AS 25.30.050(a), addresses the proper procedure to be followed when two states have concurrent jurisdiction over a custody dispute and proceedings are initiated in both states. The section provides as follows:

> A court of this State shall not exercise its jurisdiction under this Act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state *exercising jurisdiction substantially in conformity with this Act,* ["this chapter" in the Alaska statute] unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.

Uniform Act § 6(a), 9 U.L.A. 134 (1979) (emphasis added) (adopted in Alaska in substantially identical terms at AS 25.30.-050(a)). In accordance with this section, Alaska could not exercise its jurisdiction over this dispute as long as California was exercising its jurisdiction "substantially in conformity with this chapter."[3]

Kimmons notes that Alaska has not adopted that section of the Uniform Act conferring jurisdiction when the child and at least one parent have a significant connection with the state, which is the section California must have relied upon for jurisdiction. Kimmons argues that California therefore was not exercising jurisdiction substantially in conformity with the Uniform Act *as adopted in Alaska.* We disagree with this argument for two reasons. First, even if the standard by which to judge California's exercise of jurisdiction were the Uniform Act as adopted in Alaska, rather than the Act as initially promulgated, we would conclude that California's jurisdictional provisions are substantially in conformity with Alaska's provisions, despite the different basis available in California. One of the major purposes of the Act is to

> assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state . . . .

Uniform Act § 1(a)(3), 9 U.L.A. 117 (1979); AS 25.30.010(3). The "significant connections" basis of jurisdiction available in California is consistent with this purpose of the Act and is therefore in substantial conformity with the Act as adopted in this state.

Second, however, we do not believe that California's jurisdictional provisions should be compared with Alaska's provisions to determine whether they are in "substantial conformity"; instead, we believe California's provisions should be compared with the provisions set forth in the Uniform Act.

---

**2.** We note that California would have made our task less difficult if it had clearly stated in its order what the basis was for its conclusion that it had jurisdiction under the Uniform Act to resolve this custody dispute.

**3.** Section 13 of the Uniform Act, 9 U.L.A. 151 (1979) (AS 25.30.120), similarly provides that

the superior court must recognize and enforce an initial or modification decree entered by a court of another state if that state assumed jurisdiction over the case under statutory provisions substantially in conformity with the Uniform Act.

California has adopted all of the jurisdictional provisions set forth in the Act, whereas Alaska has omitted one of the provisions. Accordingly, California's provisions are not just in substantial conformity with the Act, they are identical; it is Alaska's provisions which are merely in substantial conformity. We therefore conclude that it was appropriate for Alaska to defer to California's exercise of jurisdiction over this dispute because it appears that California was exercising jurisdiction substantially in conformity with the Act under the "significant connections" basis of jurisdiction.

■ Even if we were to conclude, however, that California did not have the significant connections with Colin necessary for jurisdiction at the time Heldt commenced his proceedings, we would nonetheless hold that the superior court acted properly in deferring to California under the rationale we expressed in *Rexford v. Rexford,* 631 P.2d 475 (Alaska 1980). As we indicated in *Rexford,* Kimmons could not confer jurisdiction upon California by stipulating that jurisdiction existed. *Id.* at 478. The superior court in Alaska nonetheless does not necessarily abuse its discretion in deferring to another state that arguably lacks jurisdiction to determine the dispute. *Id.* at 479. In *Rexford,* we quoted the Commissioner's Note to section 6 of the Uniform Act, 9 U.L.A. 135, as follows:

> "While jurisdiction need not be yielded under subsection (a) [AS 25.30.050 in this state] if the other court would not have jurisdiction under the criteria of this Act, the policy against simultaneous custody proceedings is so strong that it might in a particular situation be appropriate to leave the case to the other court even under such circumstances."

631 P.2d at 479. As was the case in *Rexford,* this appears to be another instance in which it would be appropriate to leave the custody dispute to California even if we believed California was not exercising its jurisdiction properly. Our statement in *Rexford* is equally applicable in this case:

"[i]t is less important which court exercises jurisdiction than that an informed decision is made which provides the stability of home environment and secure family relationships needed by the children." *Id.* California prepared two investigative reports of its own and had a copy of the report prepared in Alaska at Kimmons' request; it also had the opportunity to examine all of the parties, as well as expert witnesses familiar with the parties. California thus had "the fullest amount of information possible to make a fair and just determination of the custody issue." *Id.* As we indicated in *Rexford,* "It would subject the parties to needless expense and the possibility of being held in contempt by one court for complying with an order of the other court to permit Alaska to continue its proceedings." *Id.*

We do not mean to imply that every time it appears that another state is conceivably exercising jurisdiction in substantial conformity with the Uniform Act that the Alaska Superior Court *must* defer to the courts of that state; there are undoubtedly circumstances under which this would not fulfill the purposes of the Uniform Act. *See* Uniform Act § 1, 9 U.L.A. 116–17 (1979); AS 25.30.010. In this case, however, the superior court twice considered the particular facts before it and concluded that it was appropriate to defer to California. We note with great favor that the superior courts in Alaska and California complied with the spirit, as well as the letter, of the Uniform Act by communicating with each other "to the end that the issue be litigated in the more appropriate forum and that information be exchanged" between the two states. Uniform Act § 6(c), 9 U.L.A. 134 (1979); AS 25.30.050(c). After numerous communications, the superior court in Alaska determined that it was appropriate to defer to California's exercise of jurisdiction and to grant recognition to California's decree. We believe that the court did not abuse its discretion in reaching these determinations. *See Szmyd v.*

*Szmyd,* 641 P.2d 14 (Alaska 1982); *Rexford v. Rexford,* 631 P.2d 475 (Alaska 1980).[4]

## III. AWARD OF ATTORNEY'S FEES

The superior court awarded Heldt full attorney's fees in the sum of $3,060.00. Kimmons argues that this award was improper. The court based the award on three different statutes: AS 25.30.060(g), AS 25.30.070(c), and AS 25.30.140(b).[5]

■ AS 25.30.060 addresses the concept of forum non conveniens in child custody jurisdiction disputes. It provides in relevant part as follows:

> (a) The superior court may decline to exercise its jurisdiction any time before issuing a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
>
> . . . .
>
> (g) If it appears to the court that it is clearly an inappropriate forum, it may require the party who commenced the proceedings to pay, in addition to the costs of the proceeding in this state, necessary travel and other expenses, including attorney fees, incurred by other parties or their witnesses.

Kimmons' petition was not dismissed because Alaska was an inconvenient forum, but because proceedings were pending simultaneously in Alaska and California and the proceedings in California were initiated first. Accordingly, it was improper for the superior court to base its award of attorney's fees on this statute.

■ AS 25.30.070, concerned with the "reprehensible conduct" of the parties, provides in relevant part as follows:

> (a) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may not exercise its jurisdiction unless it is necessary in an emergency to protect the child for reasons set out in § 20(2) of this chapter.
>
> . . . .
>
> (c) In appropriate cases a court dismissing a petition under this section may charge the petitioner with necessary travel and other expenses, including attorney fees, incurred by other parties or their witnesses.

The superior court's award of full attorney's fees to Heldt would be proper under this statute only if the court found that Kimmons' conduct was reprehensible from the time she commenced the Alaska proceedings. The court did not set forth any findings of fact when making the award of fees, and it would be inappropriate for us to assume that it found that Kimmons was acting in bad faith when she filed her action in Alaska. Accordingly, we must remand this issue to the superior court for further consideration. If the court finds that commencement or maintenance by Kimmons of her suit constituted "reprehensible conduct," an award of full attorney's fees from that point forward would be permissible under the statute.

The last statute relied upon by the superior court was AS 25.30.140(b), which provides that "[a] person violating a custody decree of another state, which makes it necessary to enforce the decree in this state, may be required to pay necessary travel and other expenses, including attorney's fees, incurred by the party entitled to the custody or his witnesses." The Commissioner's Note to this section in the Uniform

---

4. We accordingly need not address the secondary issues raised by Kimmons on appeal as to whether the superior court erred in refusing to appoint a guardian ad litem to represent Colin in the Alaska proceedings and whether the court erred in refusing to consider the report of the Custody Evaluator in these proceedings.

5. Heldt did not argue that attorney's fees could be awarded under AS 09.55.200(a)(1) or Alaska Civil Rule 82. AS 09.55.200(a)(1) governs the award of attorney's fees only during the pendency of a divorce action, which this was not. Alaska Civil Rule 82, promulgated pursuant to AS 09.60.010, governs the award of attorney's fees "except as otherwise provided by statute." Inasmuch as the award of attorney's fees in proceedings under the Uniform Act is provided for by statute, awards cannot be made under Civil Rule 82.

Act states: "Subsection (b) makes it clear that the financial burden of enforcement of a custody decree may be shifted to the wrongdoer." 9 U.L.A. 159 (1979).

■■■ We are faced with the same problem reviewing the court's award of attorney's fees under this statute as under the "reprehensible conduct" statute—the court did not make any findings of fact and we therefore are unable to determine whether the court found that Kimmons was violating the custody order of California, making it necessary for Heldt to enforce the decree in this state and, if so, at what point in time this occurred. Accordingly, this issue must also be remanded to the superior court for further consideration.

The judgment of the superior court is therefore AFFIRMED IN PART and REVERSED IN PART.

RABINOWITZ, Justice, joined by MATTHEWS, Justice, dissenting.

In my view, the California court lacked jurisdiction. Thus, it was erroneous for the superior court of Alaska to defer to the California court. The effect of the majority's ruling in the instant case is to emasculate portions of the Uniform Child Custody Jurisdiction Act, which was devised in part to prevent a result such as that reached by the majority here.

The Uniform Child Custody Jurisdiction Act (Uniform Act) seeks to avoid jurisdictional conflicts by establishing specific rules which the adopting states are required to observe. In this case Heldt initiated custody modification proceedings in the California superior court only five weeks after Kimmons had sent Colin from Alaska to California. The only basis for jurisdiction in California is under § 3(a)(2) of the Uniform Act, which was omitted from the analogous section in Alaska's version of the

Uniform Act. *See* AS 25.30.020. This section reads:

A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(2) It is in the best interests of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . .

9 U.L.A. 122 (1979). In *Rexford v. Rexford*, 631 P.2d 475, 478 (Alaska 1980) we said in part:

[S]ubject matter jurisdiction either exists or does not exist at the time when the petition is filed with the court. . . . Facts developed after that, such as the length of time the [child has] now been in California, cannot be considered when determining whether the court initially had jurisdiction to hear the action.[1]

(Citation omitted.)

Thus, California jurisdiction must be tested as of January 7, 1981.[2] The Commissioners' Note to § 3 of the Uniform Act makes it clear that the exercise of jurisdiction by California as an alternative to home state jurisdiction in Alaska was erroneous, because the five-week history of the child in California provides a great deal less access to relevant evidence about Colin and his family than the immediately preceding thirty-four-month period he was living with his mother in Alaska. An observation in the

---

1. The fact that Kimmons participated in the California proceedings without objection has no bearing on the propriety of the California court's assertion of subject matter jurisdiction. The conduct of a party cannot confer upon the court power to decide a case which it would not otherwise enjoy. *Rexford v. Rexford*, 631 P.2d 475, 478 (Alaska 1980).

2. Alaska clearly has home-state jurisdiction under § 3(a)(1), AS 25.30.020(a)(1), since it was Colin's home state for nearly three years (February 1978 through December 1, 1980), a period ending only five weeks before the petition was filed by Heldt in California.

Commissioners' Note is of particular significance here:[3]

> Paragraph 2 perhaps more than in any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. *The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state.* (Emphasis supplied in last two sentences.)

9 U.L.A. 124 (1979).

In my opinion, the question of optimum access and maximum rather than minimum contact as of January 7, 1981, can only reasonably be resolved in favor of Alaska.[4]

The question which remains is whether the superior court of Alaska properly deferred to the California court, despite the fact that California lacked jurisdiction. Under circumstances where California had no jurisdiction at all, it is inappropriate for the courts of Alaska to defer to the California courts.[5] *Rexford v. Rexford*, 631 P.2d 475 (Alaska 1980), does not address this question. In *Rexford* we held that the deferral to California in a situation in which the California court did not have jurisdiction was appropriate. In *Rexford* we relied on the following Commissioners' Note to § 6 of the Uniform Act.

> While jurisdiction need not be yielded under subsection (a) [AS 25.30.050 in this state] if the other court would not have jurisdiction under the criteria of this act, the policy against simultaneous custody proceedings is so strong that it might in a particular situation be appropriate to leave the case to the other court even under such circumstances.

631 P.2d at 479, quoting 9 U.L.A. 135 (1979). *Rexford* failed to distinguish between the situation in which the court of another state has jurisdiction but is not exercising its jurisdiction under provisions substantially in conformity with the Alaska act, on the one hand, and where it does not have jurisdiction at all, on the other. Only in the first situation would deference by the Alaska courts be appropriate.[6]

---

**3.** *See also* the following example given in the Commissioners' Note:

> If State 2, for example, was the state of the matrimonial home where the entire family lived for two years before moving to the "home state" for 6 months, and the wife returned to State 2 with the child with the consent of the husband, State 2 might well have jurisdiction upon petition of the wife. The same may be true if the wife returned to her parents and her former home state where the child had spent several months every year before.

9 U.L.A. 124 (1979). In this example, the home state has only six months of contact while State 2 has more contact than the home state, even though it is not technically the home state. In the present case, that is not so, since the comparison is home state 34 months—State 2, five weeks.

**4.** *See Davis v. Davis,* 53 N.C.App. 531, 281 S.E.2d 411, 416 (1981) (four weeks in California does not confer jurisdiction).

**5.** In this situation, the judgment rendered by the second state is void and subject to collateral attack. Restatement (Second) of Conflicts of Laws § 105 (1971).

**6.** In light of my conclusion that the California court lacked jurisdiction and that Kimmons properly commenced custody proceedings in Alaska, I would reverse the award of attorney's fees to Heldt. I disagree with the majority that a remand on this issue is appropriate.